UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDRA PRIEMER,

        Plaintiff,

                              Case Number 06-13423-BC
v.                                Honorable Thomas L. Ludington

GLADWIN COUNTY DISTRICT LIBRARY,
BRUCE GUY,

        Defendants.
_____/

## **OPINION AND ORDER GRANTING**
## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On August 3, 2007, Plaintiff Sandra Preimer filed an amended complaint against Defendants Gladwin County District Library (Library) and Bruce Guy, Defendant Library's director. She alleged First Amendment retaliation, based on her conversation with a county commissioner relating her concerns about Defendant Library and the subsequent termination of her employment. On July 18, 2007, the Court held a hearing on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56.

I.

As of 1998, Plaintiff worked as a the library assistant in charge of children's services and for Defendant Library. In this role, which is distinct from the role of the director of children's services, she arranged for story times and crafts for children.

At some point before 2001, the then-office manager at Defendant Library, David Volk, embezzled money. Plaintiff worked with the Michigan Department of the Treasury and auditors to track paperwork for the investigation. Dft. Br., Ex. A, p. 54. According to Plaintiff, the auditors

found money missing from payroll and day cash, and Volk was ordered to pay restitution at trial. *Id.* at 56.

In 2001, she became the "accountant," although she continued doing work for children's services as well. She described her work as the accountant as shared with the county courthouse. According to her deposition:

> [The county was] in charge of our millage and the accounts with the money in them. We would put together a list of bills that needed to be paid. They would be approved. They would cut us the checks, so that I can run the checks, so we had a certain amount to cover the bills. I had no access to any of the accounts.

Dft. Br., Ex. A, p. 53. Her duties included "[a]ccounts payable, payroll, . . . filing, doing the budget amendment, attending the board meetings, putting together board packets," and general office duties. *Id.* at 52. She prepared time sheets and bills and kept track of filing. Pl. Br., Ex. 12, p. 144.

In January 2003, Defendant Guy joined Defendant Library as its director.

According to Plaintiff, Defendant Guy breached security by entering her office while she was in the hospital, which required a not insubstantial amount of time away from work, in November 2003. Based on the partial description provided in her deposition, it seems that materials pertaining to the Volk investigation were stored in her office. *Id.* at p. 56. According to Defendant Guy, he entered Plaintiff's office after requesting permission from the library board to do so. Subsequently, a police officer came and collected the investigation materials from Plaintiff's office. According to his deposition, Defendant Guy learned that Plaintiff complained about that alleged security breach within the next few weeks. Pl. Br., Ex. 3, p. 51.

Shortly thereafter, Defendant Guy assigned Plaintiff to the position of an assistant reference librarian. (Defendant Guy states that she commenced her new role on November 3, 2003, which occurred before the police removed the Volk investigation materials.) Plaintiff acknowledged that

her pay was unaffected by this change. Defendant Guy assumed the accounting responsibilities that Plaintiff had previously performed. In that role, she handled questions at the circulation desk, answered the phone, and waited on patrons. Dft. Br., Ex. A, p. 58. On January 6, 2004, Defendant Guy sent Plaintiff a memo with the caption, "Absent Without Authorization," directing her to get permission before leaving the building during the workday. Dft. Re., Ex. C. From February (or March) to April 2005, Plaintiff also handled the day cash fund, a fund for fines and copy costs, etc. *Id*. at p. 154.

On April 22, 2005, Plaintiff received her performance evaluation at a meeting attended by her supervisor, Laura Rickord (now Laura Walters), and by Defendant Guy. Dft. Br., Ex. A, p. 175. Plaintiff felt "pretty low" about receiving a "satisfactory" evaluation, and she expressed her opinion. According to her deposition, Defendant Guy did not speak very much at that meeting, although she maintains that her supervisor stated that Defendant Guy wrote the evaluation. (Plaintiff's performance evaluation reflects rankings near a mid-point in almost all categories and no rankings at the lowest level. Dft. Br., Ex. B.)

A few days after that meeting, Plaintiff spoke to County Commissioner Lou Kalinowski.[1] According to Kalinowski's notes of the meeting, Plaintiff related that all mail and bills passed only through Defendant Guy and that some money was missing from the day cash fund, which she felt was stored in an unsecure location. Pl. Br., Ex. 8. She also expressed concerns over possible errors in the allocation grant funding, and she explained that she had considered requesting an audit by the

---

[1]The former director of Defendant Library, Leonard Zembruski, arranged Plaintiff's meeting with Kalinowski. When asked at her deposition if she raised her concerns with the director, Plaintiff explained that she had raised her concerns to Zembruski, who resigned as the director in 2004. According to Plaintiff, in March and April 2005, Zembruski was Plaintiff's boyfriend.

Michigan Library Association. *Id*. Kalinowski also provided an affidavit stating that Plaintiff contacted him with concerns about accountability to taxpayers. *Id*. at Ex. 9. He recited the same specifics and added his sense that Defendant Guy had not followed Defendant Library's policies regarding evaluations for Plaintiff. *Id*.

According to Plaintiff's deposition, she told Kalinowski about several concerns. These included mail going only to Defendant Guy, "money shortages, the thefts . . . , [and] the possibility that I didn't believe he was making all the obligations of the grants that he was receiving; and that we could possibly lose these grants if they ever did an audit on them; and we would never receive grants again." Dft. Br., Ex. A, pp. 108-109.

She explained that she did not understand Kalinowski's notes regarding borrowed cash from the day fund and money missing and unaccounted for over as long as six months. *Id*. at pp. 109, 110. Her only recollection pertained to how a co-worker, who was in charge of that cash, told those working at the desk about four separate occasions in which money disappeared.[2] *Id*. at p. 111. Those at the desk then speculated about how to better keep the money safe. *Id*. She recounted how the co-worker responsible for the money told Defendant Guy and how Plaintiff also talked to him about the shortages, reminded him to get a lock, and suggested a lock that she had. *Id*. Essentially, she felt that "this is library money; and it should be taken better care of." *Id*. at p. 112.

As to her statements about losing funding for not meeting grant requirements, she acknowledged that she had no training or involvement with the grants, although employees were supposed to track certain information in logs for the grants. *Id*. p. 113. She expressed her concern

---

[2]Based on one of Plaintiff's subsequent letters of rebuttal, the amounts of cash shortages were approximately $160, $67, $36, and $30, respectively. Pl. Rs., Ex. 14, p. 2.

that having only Defendant Guy handle mail was not a "good practice." *Id.* at 110.

At Defendant Library's board meeting on April 26, 2005, County Commissioner Bill Rhodes, the liaison to Defendant Library, gave Defendant Guy a copy of Kalinowski's notes. Dft. Br., Ex. D., pp. 68-69. Defendant Guy believed that the notes pertained to a conversation between Kalinowski and Plaintiff. That same day, Plaintiff was given a reprimand, stating that she had failed to follow the chain of command within the organizational structure when she addressed her concerns to a county commissioner.

On April 27, 2005, Plaintiff's supervisor presented Plaintiff with an evaluatory document.[3] *See* Pl. Rs., Ex. 5. In that document, Plaintiff's supervisor wrote as follows:

> Since the prior evaluation - there has been unsatisfactory conduct. You did not follow chain of command with your concerns. [Defendant Guy] has discussed chain of command at prior staff meetings. If there were concerns about day cash, you should have followed chain of command. You will no longer be responsible for handling the daily cash.

*Id.* Also, Plaintiff's ratings in two individual categories decreased, as did her overall rating, which was reduced to "satisfactory minus."

On April 29, 2005, Plaintiff wrote three letters of rebuttal. Although it is unclear on the face of the letters to whom they were directed, she lists the bases of her disagreement with her most recent evaluation. She stated that she did follow the chain of command and that the First Amendment protected her ability to express her opinions to persons outside Defendant Library. She also catalogued the instances of missing cash, described how she came to handle the day cash fund,

---

[3]Defendant Guy describes this document and meeting as a "counseling session." Plaintiff describes them as a second performance evaluation. Notably, the form used here is identical to that of a performance evaluation.

and again insisted that she contacted Defendant Guy and then the Library Board president[4] in an effort to share her concerns. Finally, she objected to the evaluation because her supervisor, rather than the director, performed it and because no attention was given to what she felt were ten years of good service.

On September 8, 2005, Plaintiff received a memo from Defendant Guy requesting a written report to explain her absence from the library to do bookkeeping for the Literacy Council. Pl. Rs., Ex. 18. On September 12, 2005, Plaintiff wrote to the president of the board of the Literacy Council. Plaintiff described her long-standing relationship with the council and her difficulty in attending their meetings due to the leadership of Defendant Guy. She stated, "If the harassment continues here at the library, I will be forced to resign." Pl. Rs., Ex. 16.

On September 12, 2005, Plaintiff wrote Defendant Library's board, largely focusing on the theft of her wallet for which she felt Defendant Library should reimburse her. Pl. Rs., Ex. 17. She reiterated her concerns about security and requested to know whether the president intended to respond to her earlier letters of rebuttal.

Around that time, Defendant Library faced a need to make budget cuts. According to the Library Board president, the director (with the assistance of the finance committee) prepares a number of budgets to present to the board. Dft. Br., Ex. G. Of the three budgets proposed by Defendant Guy, two contained cuts of positions. *Id*. One would have cut a full-time position and one would have cut three full-time positions. Although Defendant Guy would have preferred this

---

[4]The deposition of Defendant Library's Board president, Sandra Aultman, shows that she has only a tentative recollection of possibly hearing from Plaintiff about her evaluation and of receiving these rebuttals. Pl. Rs., Ex. 15, pp. 11-12.

final plan, the board opted for the budget that cut one full-time position.[5] He then made the decision to cut a reference librarian position, having determined it was a luxury to provide that service. The other reference librarian, Donna Drudge, had more seniority than Plaintiff.

On December 29, 2005, near the end of the day, Defendant Guy informed Plaintiff that her position was eliminated, effective at 5 p.m. that day, under the next year's budget. Pl. Rs., Ex. 3, p. 123; Ex. 11. In his deposition, he stated that Plaintiff's conversation with Kalinowski did not inform on his decision. Dft. Br., Ex. D, p. 137.

Plaintiff filed suit against Defendants Guy and Library. She alleges a single claim of a violation of her First Amendment rights, under 42 U.S.C. § 1983. Defendants filed their motion for summary judgment under Federal Rules of Civil Procedure 12(c) and 56.

II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

III.

---

[5]Plaintiff asserts, in conjunction with Defendant Library's 2006 budget and a response to an interrogatory, that Defendant Library hired three new (part-time) employees before her eventual termination at the end of 2005 and three new employees in 2006. *See* Pl. Rs., Ex. 7, no. 5; Ex. 12, pp. 202-203; Ex. 13.

To show a violation of 42 U.S.C. § 1983, a plaintiff must show that a defendant acted under color of state law and that the offending conduct deprived her of rights secured by federal law. *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citation omitted). In a case of First Amendment retaliation, an employee must show that "(1) [she] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by his protected conduct." *Scarborough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).

A public employer cannot retaliate against an employee for certain instances of protected speech. *See Connick v. Meyers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). A court must first consider whether an employee's speech "may be fairly characterized as constituting speech on a matter of public concern." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citation and internal quotations omitted). In *Connick*, 461 U.S. at 148, the Supreme Court concluded that an employee's speech was not protected speech, in part, because the employee made no attempt to bring her allegations against her employer to the public, instead circulating them only internally. *See also Farhat v. Jopke*, 370 F.3d 580, 590-591 (6th Cir. 2004) (noting that an employee's motive is relevant, but not dispositive, when considering whether speech is of public concern).

A matter of public concern includes "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Internal quarrels about personnel and performance do not reach a level of public concern and, so, receive no First Amendment protection. *Rodgers v. Banks*,

344 F.3d 587, 597 (6th Cir. 2003); *see also Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999) (refusing to afford First Amendment protection to the "quintessential employee beef" of management's incompetence) (citation omitted).

"Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law . . . [and in] seeing that public funds are not purloined." *Mahronic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986). Yet in *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988), an employee's speech regarding public money was not automatically protected:

> The mere fact that public monies and government efficiency are related to the subject of a public employee's speech do not, by themselves, qualify that speech as being addressed to a matter of public concern. . . . However, it is possible to view allegations that public monies are being spent unwisely and that a government program is being run inefficiently, as implying that a public agency or official is corrupt.

(Citation omitted). In *Barnes*, the Sixth Circuit concluded that a terminated employee, who made allegations about spending by his government employer, failed to present any evidence to link those purported improprieties to corruption, a necessity to surviving summary judgment. *Id*. at 734-735. There, the plaintiff relied solely on his deposition and offered no further evidence that his speech implicated a matter of public concern. *Id*.; *see also Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir. 2007) (ruling that a police officer's communication objection to canine training policy did not pertain to the public interest).

If a public employee's speech is pursuant to that employee's official duties, then the speech is not protected speech. *Garcetti v. Ceballos*, ___ U.S. ___; 126 S.Ct. 1951, 1960 (2006). Consequently, the employee remains susceptible to employer discipline for any such statements. *Id*. In *Garcetti*, a deputy district attorney prepared a memo regarding a pending prosecution that was contrary to his employer's views. The Supreme Court held that his reassignment, transfer, and

denial of promotion did not represent retaliation against the exercise of his First Amendment rights, because his speech made pursuant to his official duties did not receive constitutional protection.

If speech by a public employee does involve a matter of public concern, then a court must apply the balancing test of *Pickering* "to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer." *Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999) (citation omitted). "While public employees may not be required to sacrifice their First Amendment speech rights in order to obtain or continue their employment, . . . a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions." *Rodgers*, 344 F.3d at 596 (citations omitted). "[P]ertinent considerations [include] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citation omitted).

Regarding causation, the third element of First Amendment retaliation, a plaintiff must show that the speech was a substantial or motivating factor in the adverse employment action. *Haynes*, 474 F.3d at 363 (citation omitted). "The fact that an adverse employment action occurred after the exercise of free speech, without more, is insufficient to establish the link that is central to a First Amendment retaliation claim." *Farmer v. Cleveland Public Power*, 295 F.3d 593, 602 (6th Cir. 2002) (citation omitted). Yet the Sixth Circuit has also stated that if "the temporal proximity between the protected activity and the adverse employment action is acutely near in time, [then] that close proximity [can be] indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (citations omitted).

Here, despite Defendants' arguments, Plaintiff's speech does not fall, in this Court's view, within the scope of *Garcetti*. The public employee there had a duty to prepare memos and to advance arguments relating to his assigned cases. In this case, Plaintiff's duties as an assistant reference librarian (or even as an assistant in children's services) do not require speech in the same way as the plaintiff in *Garcetti*. Although interaction with patrons, children, or those with whom she might coordinate an event would surely require speaking, that is not the speech at issue. Alerting a county commissioner to concerns that she had, or alerting anyone, is not obviously within her roles. Although her speech involved matters related to her employment, Defendants have made no showing that speech on those matters fell within the scope of her employment. Thus, Defendants have not demonstrated that Plaintiff's speech receives no First Amendment protection, under *Garcetti*.

Plaintiff, however, must yet show that she engaged in protected speech, under a *Pickering-Connick* analysis. Assuming, *arguendo*, that her discussion with Kalinowski did not amount only to a "quintessential employee beef" but reached matters of public interest because of her concerns over the safekeeping of the day cash fund, she must still show that her free speech interests outweigh the efficiency interests of her employer. Although not expressly characterized as Defendant Library's efficiency interest, Defendants consistently advanced the importance of Defendant Guy's ability to supervise employees in order to manage Defendant Library efficiently. This structure, or "chain of command," as Defendant Guy characterized it, would permit the effective administration of Defendant Library and assure that individuals best positioned to respond to issues could do so. Although Plaintiff does have an interest in voicing concerns about protecting her employer's resources, permitting her to express grievances directly to a separate and distinct authority certainly

could impair her superiors' ability to manage Defendant Library. As noted by Defendants at oral argument, accepting that mode of operation, if engaged in by numerous employees, would cripple Defendant Library's ability to function and to conduct normal operations. Consequently, the Court cannot conclude that Plaintiff's free speech interests in addressing the potential for "irregularities" at Defendant Library (before she addressed them with her immediate supervisor) outweighs the efficiency interest of Defendant Library in operating effectively.

Even if Plaintiff's speech did engage in constitutionally protected speech under *Pickering* and *Connick*, she has not established a jury submissible issue regarding causation. At most, she has established a sequence of events: (1) around April 24, 2005, she expressed her concerns to Kalinowski; (2) on April 26, 2005, Defendant Guy learned of that conversation and Plaintiff was reprimanded for not following the "chain of command;" (3) on April 27, 2005, Plaintiff received a more negative evaluation and was relieved of the duty of handling the day cash fund; (4) on April 29, 2005, she wrote letters of rebuttal to Defendant Library's board; (5) on September 8, 2005, Defendant Guy requested that she explain an absence; (6) on September 12, 2005, Plaintiff wrote a letter complaining about her situation to a separate entity and another letter to Defendant Library's board, inquiring about a response to her letters of rebuttal; and (7) on December 29, 2005, Defendant Guy terminated her employment. Mere proximity in time alone does not establish causation. The events outlined by Plaintiff do not establish even proximity in time. Nothing else offered by Plaintiff shows a causal relationship.[6]

Thus, Defendants are entitled to summary judgment. Plaintiff has not identified a remaining

---

[6]The allegations about Defendant Guy's entry into her office pre-date her conversation with Kalinowski, so that entry cannot support retaliation for her speech.

genuine issue of material fact for which a trier of fact is required. Further, Defendants are entitled to judgment as a matter of law, because Plaintiff did not engage in constitutionally protected speech and has not supported the element of causation for her claim of First Amendment retaliation. For these same reasons, Defendant Guy has qualified immunity, because Plaintiff has not shown that a constitutional violation occurred. *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).[7]

IV.

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [dkt #13] is **GRANTED**.

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: July 25, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 25, 2007.

                          s/Tracy A. Jacobs
                          TRACY A. JACOBS

---

[7] Defendants also advance an intricate argument based on the status of Defendant Library as either a district or county library under state law. According to Defendants, the progress of events involving a contract about Defendant Library's status as it attempted to change from one statutory and financial status to another and the consequence of the eventual failure of a millage that would make that possible also informs on this argument. At oral argument, however, Defendants conceded that at all relevant times during Plaintiff's employment, no change had yet occurred as to Defendant Library's status under state law. The Court will, thus, not address this argument further.